FILED
07/18/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2018

## STATE OF TENNESSEE v. MICHAEL ANTHONY SKETTINI

Appeal from the Circuit Court for Blount County
No. C18827, C20859      Tammy M. Harrington, Judge

_____

### No. E2017-02468-CCA-R3-CD

_____

The Defendant-Appellant, Michael Anthony Skettini, appeals from the revocation of supervised probation by the Blount County Circuit Court. On appeal, the Defendant argues that the trial court erred in ordering him to serve the balance of his sentence in confinement. Upon review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Lindell Kirk (on appeal), Knoxville, Tennessee, and Matthew Elrod, District Public Defender, and Mack Garner (at hearing), Assistant District Public Defender, for the appellant, Michael Anthony Skettini.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Mike L. Flynn, District Attorney General; and Ryan Desmond, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The judgment in this appeal shows that on July 22, 2011, the Defendant entered guilty pleas to reckless endangerment and aggravated assault and received an effective five-year sentence to be served on supervised probation. At the December 5, 2017 revocation hearing, the probation violation report, entered into evidence without objection, further showed that on May 21, 2012, the Defendant pleaded guilty to simple possession of a schedule III substance, and received a sentence of eleven months and twenty-nine days, to be served consecutively to his prior case. The Defendant's supervised probation was reinstated and also ordered to be served on supervised probation. The violation report details approximately twenty-five violations of probation

for the period between December 2013 and August 2017, for which the probation officer ultimately requested a warrant for the Defendant's arrest on August 1, 2017. The grounds cited in the warrant included (1) failure to follow a Forensic Social Worker's recommendation of attending Relapse Prevention Group; (2) failure to report to his probation officer on July 20, 2017 and July 26, 2017; (3) testing positive for cocaine (May 18, 2017 and July 27, 2017) and marijuana (August 1, 2017); and (4) failure to "consistently" pay court costs ($1,841.75) and supervision fees ($935).

At the hearing, the Defendant's probation officer, Ashley Watson, testified and confirmed the allegations in the report. The Defendant had multiple positive drugs screens, which prompted her to send him to a forensic social worker, who recommended attendance at a relapse prevention group. As reflected in her report, the Defendant was not immediately violated when he failed to attend the class. On July 27, 2017, the Defendant reported to her as required, but the probation officer observed that "he just seemed like he didn't care about anything that we were trying to do. He just continued to test positive." She further testified that he did not seem to want any sort of drug addiction help or treatment. Although the Defendant had successfully completed a court ordered SAFE class, this was his fourth probation violation.

The Defendant testified that since his recent incarceration, he had been involved with the CRC Program, Financial Peace, and the Celebrate Recovery Program and had only been written-up once due to a "misunderstanding." He explained the failed drug screens on "a lot of stuff going on in [his] life" and "resorted to using drugs because [he] was having to stay up late and then work on stuff." He failed to report because he "panicked" when he found out that he was going to be violated. He did not attend the relapse prevention class because he had gotten the dates mixed up. If given split confinement, he would "stay away from all of the people that [he] thought were [his] friends," start going to church, and find gainful employment fixing cars or doing tree work. He was encouraged because he reported without incident for almost twenty-two months prior to the instant, fourth violation of probation.

On cross-examination, the Defendant admitted that he had previously been on probation for a three-year sentence for aggravated assault, which was revoked. He had pleaded guilty to aggravated assault the same day he pleaded guilty to reckless endangerment. Initially, for the three-year sentence, he received six-months' split confinement. He said the reckless endangerment charge at issue carried a two-year sentence of straight probation consecutive to the three-year sentence for aggravated assault. He said his first probation violation was for simple possession of a schedule III substance. His probation was not revoked, but instead he received a ninety-day split confinement and eleven months and twenty-nine days on top of the five-year sentence. He received another violation for a DUI charge in 2013, for which he received one-year's

split confinement and was released back on probation. On his third violation, the court revoked his three-year sentence but dismissed the violation on the two-year sentence and the eleven months, twenty-nine days sentence. The Defendant admitted that this was his fourth probation violation. He also agreed that everything his probation officer said was accurate.

At the conclusion of the hearing, the trial court found that the Defendant had four probation violations. The court noted that the history of the Defendant's cases was long and complicated. The court said that "it appears, quite frankly, that when in a controlled environment, like jail, and with a clear head, [the Defendant did] well." Acknowledging that the Defendant did not qualify for drug court and looking at the history and prior violations, the court revoked the Defendant's sentences and ordered him to serve the balance incarcerated. It is from that order that the Defendant now timely appeals.

## ANALYSIS

On appeal, the Defendant argues that the trial court abused its discretion in giving up on further community supervision and ordering confinement for the balance of the sentence. The State contends, and we agree, that revocation was proper.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." T.C.A. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, the defendant must show "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3-CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar. 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); T.C.A. §§ 40-35-308,-310,-311 (2012).

In this case, there was substantial evidence to support the trial court's order revoking the Defendant's probation. The Defendant admitted to the facts presented and to the probation violation. In addition, the Defendant had three prior probation violations for which he received sentences alternative to incarceration. Given the Defendant's history, his testimony, and the testimony of his probation officer, it is evident that the Defendant has little regard for the probation conditions imposed. Consequently, we conclude that the trial court did not abuse its discretion in revoking the Defendant's supervised probation and ordering him to serve the balance of his sentence incarcerated. The Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE